No. 21,886.

T. M. TRIPLETT, *Appellant,* v. JOHN D. FEASEL, *Appellee.*

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT — *Purchaser Found — Right to Commissions.* A real-estate agent who, acting in good faith, secures for his customer an exchange of land on terms which the owners embody in a written contract, thereby earns his commission for securing such purchaser, although the trade falls through because such purchaser does not own all the land he attempts to convey.

2. TRIAL—*Erroneous Instruction—New Trial.* The rule is followed that when it appears probable that an erroneous instruction upon a vital matter has affected the verdict, a new trial should be granted.

Appeal from Anderson district court; CHARLES A. SMART, judge. Opinion filed July 5, 1919. Reversed.

*Charles W. Garrison,* of Topeka, *J. G. Johnson,* and *M. Schoonover,* both of Garnett, for the appellant.

*Noah L. Bowman,* and *J. K. Bowman,* both of Garnett, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff secured a trade of a farm in Missouri for the defendant's farm in Kansas, for which services the sum of three hundred dollars was to be paid. In his bill of particulars plaintiff stated that the exchange secured by him was satisfactory to the defendant who, after he had entered into the contract, refused to complete the same. The defendant testified, in substance, that, after having entered into the contract for the exchange, he discovered that the Missouri land failed to contain by 150 to 200 acres the amount of land it had

been represented to him to contain. It was claimed that the defendant's agent and the agent of the Missouri party both misrepresented the amount of the land, and the defendant so testified. The court instructed in part:

"If Mr. Thompson, the agent of the Missouri owner, defrauded Mr. Feasel into signing this contract, and sold to him, or represented to him that he was to receive from one hundred and fifty to two hundred acres more land than he owned—than his principal owned—then Mr. Feasel had a right to refuse to carry out the contract when he discovered it, and if he was defrauded into signing this contract, then he was not under any liability to carry it out, and he would be under no liability to pay Mr. Triplett his three hundred dollars commission."

The effect of this was to charge that if the defendant had been fraudulently induced to make the contract by the Missouri agent, he not only had a right to refuse to carry out the contract, but to withhold the commission to his own agent, regardless of whether the latter had been guilty of fraud or not. So the question is: If his agent, acting in good faith, procured an exchange which fell through because the Missouri party did not own all of the land represented, had the plaintiff thereby earned his commission?

In *Lockwood v. Halsey,* 41 Kan. 166, 21 Pac. 98, a broker, acting in good faith, negotiated the exchange of property for his principal and was paid his commission, but it was afterwards discovered that the title to the land received was defective, and the representation was, as to its situation and value, false. It was held that before the owner could receive back the commission he must show that the broker acted in bad faith. In *Hutton v. Stewart,* 90 Kan. 602, 135 Pac. 681, it was held that—

"Ordinarily a real-estate broker has earned his commission when he has produced a customer with whom his principal enters into an enforceable contract for the sale of the land, although the title does not actually pass." (Syl. ¶ 1.)

In the opinion it was said:

"The contract was valid and binding. Stewart could have maintained an action on it for specific performance or for damages. If Harmon proved to be unable to perform and to be financially irresponsible, this did not affect the plaintiffs' right to a commission (unless they had made some misrepresentation on the subject, which is not charged), inasmuch as Stewart had accepted him as a purchaser by entering into a contract with him." (p. 604.)

This decision followed and approved *Lyman v. Wagner,* 90 Kan. 12, 132 Pac. 988, in which a similar question was in-

volved.   The supreme judicial court of Massachusetts in *Roche v. Smith,* 176 Mass. 595, held that a broker, through whose efforts the contract was made, had earned his commission, although the title to the properties exchanged for that of his principal could not be made good.   In *Knapp v. Wallace,* 41 N. Y. 477, it was held that—

"A real-estate broker employed to purchase real estate, earns his commission, when he has, *in good faith,* brought to his employer a vendor, who makes a written contract with him for the sale of the property.  It is no answer to his claim for commission against such employer, that the vendor could not make perfect title, and was, therefore, unable to carry out his contract of sale."   (Syl.)

(See, also, *Fox v. Ryan,* 240 Ill. 391; 9 C. J. 587, § 85; 9 C. J. 608, § 93; Note, 43 L. R. A. 593; Note, 44 L. R. A. 593.)

The charge is quite full, giving the opposing claims of the parties.   The good faith of the plaintiff was expressly stated to be a question of fact for the jury to decide from all the evidence, after they had been told that the defendant claimed that he had been defrauded by the Missouri agent, and also by the plaintiff.   This was also given:

"And again, if he was defrauded by Mr. Thompson as he claims, and Mr. Triplett was a party to that fraud, then he is under no obligation to pay Mr. Triplett the three hundred dollars.  If, however, he was not defrauded by Mr. Thompson, the agent of the Missouri owner, but that he, Feasel, understood it and simply refused to carry out the terms of the contract without any just cause, then he is liable to Mr. Triplett for the three hundred dollars."

The difficulty is that after considering all the instructions given, it is impossible to say that the jury may not have found against the plaintiff on the strength of the one complained of. Being in this condition, the record does not present a case in which it can be said that substantial justice has been done (Civ. Code, § 581) so that the error may be disregarded as immaterial.   In considering this provision of the civil code it has been said:

"But where it appears probable that a misdirection upon a vital matter has affected the verdict, there seems no course open but to order a new trial, although it cannot be said with absolute certainty that had proper instructions been given a different decision would have been reached.   (*Manufacturing Co. v. Bridge Co,* 81 Kan. 616, 626, 106 Pac. 1034.)

The judgment is reversed, and the cause is remanded for further proceedings.

Johnston, C. J., dissents.